

FILED & ENTERED

JAN 21 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>DIANA R. BEARD-WILLIAMS,<br><br>Debtor. | Case No. 2:10-bk-30971-RK<br><br>Chapter 7<br><br>**MEMORANDUM DECISION ON DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE RE: CONTEMPT AGAINST OSCAR ALEMAN AND HELEN ACOSTA, DOCKET NO. 63** |

On December 11, 2020 debtor Diana R. Beard-Williams ("Debtor"), through counsel, filed and served a Motion for Order to Show Cause re: Contempt Against Oscar Aleman and Helen Acosta pursuant to Local Bankruptcy Rule 9020-1. Docket No. 63 (the "Motion"). Debtor is represented by Matthew D. Resnik and W. Sloan Youkstetter of the law firm of Resnik Hayes Moradi LLP. Creditors Oscar Aleman and Helen Acosta ("Creditors") filed a late opposition, or objection, to the motion on December 28, 2020, which was due on December 18, 2020, seven days after service under Local Bankruptcy Rule 9020-1. Docket No. 64 (the "Opposition"). Creditors are representing themselves. Having considered the Motion, declarations and exhibits attached thereto, and the Opposition, the court denies the Motion for the following

reasons. [1]

By the Motion made under Local Bankruptcy Rule 9020-1, Debtor requests the court to issue an order to show cause re: contempt directed to Creditors requiring them to show cause why they should not be held in civil contempt.  Motion at 1-5.  In support of the Motion, Debtor alleges that Creditors are willfully and knowingly violating the discharge injunction in this case pursuant to 11 U.S.C. § 524(a)(3) because they seek to enforce their state court judgment against community property that she and her husband, Allen Williams Brown ("Brown"), own for a debt that had been discharged in this bankruptcy case.  *Id.* at 7,15-19.  In her declaration in support of the Motion, Debtor states that she and Brown are married, having married on June 7, 1980, that they own the subject real property at 41160 Myrtle Street, Palmdale, California  93551 (the "Property"), that title to the Property is in the names of Brown, a married man as his sole and separate property, and Stanley M. Beard, Jr. ("Beard"), a married man as his sole and separate property,[2] as joint tenants, that Debtor has a 50 percent interest in the Property as community property as she and her husband, Brown, acquired the Property during marriage in 1997 with community property funds and that the Property is maintained with community property funds, that she and Brown have lived continuously

---

[1] Pursuant to Local Bankruptcy Rule 9020-1(d)(1), the court has discretion to conclude that there is no objection to the issuance of an order to show cause on a motion for civil contempt if the responding party does not timely file a written explanation why that party should not be held in contempt.  Although Creditors' explanation is late, the court declines to conclude that there is no objection to issuance of an order to show cause because their explanation is only a few days late, and the court also considers the impact of the end of year holidays (the court was closed on December 24-27) just before Creditors filed the Opposition.  Creditors are self-represented litigants who manually filed their explanation, and as discussed herein, the Motion does not establish a *prima facie* case for relief.  However, Creditors pray for various forms of affirmative relief in the Opposition, which are not properly before the court because they have not sought relief in a proper motion under Federal Rule of Bankruptcy Procedure 9013 or in an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001 *et seq.  See* Opposition at 18.

[2] Beard may be a relative of Debtor's since Beard is part of her hyphenated surname, but her relationship with Beard, if any, is not explained in the Motion, nor is it explained by Debtor specifically why Beard is on title to the Property and she is not if she has a 50 percent community property interest in the Property. *See* Quitclaim Deed, executed by Debtor dated July 15, 2004, and recorded with the Los Angeles County Recorder on July 16, 2004, transferring her interest in the Property to Patricia Ashburne, a single woman, and Beard, a married man as his separate property, stating that the transfer is exempt from the documentary transfer tax as "GIFT – FAMILY TRANSFER."  Exhibit 6 to Opposition.

1  in the Property since its purchase, that Debtor listed the Property as an asset on

2  Schedule A, Real Property, on her bankruptcy petition filed on May 25, 2010 and that

3  Debtor listed Creditors in Schedule F, Creditors Holding Unsecured Nonpriority Claims.

4  *Id.* at 23-24 and Exhibit A attached thereto; *see also,* Petition, Docket No. 1, filed on

5  May 25, 2010.

6         Debtor relies upon 11 U.S.C. §§ 524(a)(3) and 541(a)(2) in support of her

7  request for relief on grounds that Creditors are willfully and knowingly violating the

8  discharge injunction because they seek to enforce their state court judgment against

9  community property for a debt that had been discharged in this case.  Motion at 7, 14-

10  20.  11 U.S.C. § 541(a) provides that the property of the bankruptcy estate includes "[a]ll

11  interests of the debtor and the debtor's spouse in community property as of the

12  commencement of the [bankruptcy] case . . . ."  See also, *Dumas v. Mantle (In re*

13  *Mantle),* 153 F.3d 1082, 1085 (9th Cir. 1998) ("For purposes of § 541(a)(2), all

14  community property not yet divided by a state court at the time of the bankruptcy filing is

15  property of the bankruptcy estate.")  Debtor contends in the Motion that the Property

16  was community property that she and Brown owned at the time she filed this bankruptcy

17  case in 2010 and that the Property was included in her bankruptcy estate.  Motion at 9-

18  11, 14-15; *see also, id.* at 16 ("If one spouse files bankruptcy and the other does not, all

19  community property goes into the filing spouse's bankruptcy estate.   11 U.S.C. §

20  542(a)(2).")  Thus, as such, the Property would be prepetition community property.

21         Debtor further contends that the Property as community property is protected by

22  the discharge injunction in 11 U.S.C. § 524(a)(3) arising from this case.  Motion at 7, 15-

23  19.  11 U.S.C. § 524(a)(3) provides in pertinent part:  "(a)  A discharge in a case under

24  this title . . . (3) operates as an injunction against the commencement or continuation of

25  an action, the employment of process, or an act, to collect or recover from, or offset

26  against, property of the debtor of the kind specified in section 541(a)(2) of this title that

27  is acquired after the commencement of the case, on account of any allowable

28  community claim . . . ."   In her declaration in support of the Motion, Debtor stated that

1   she received a discharge in this case on April 8, 2011, that while Creditors brought an

2   adversary proceeding against her for nondischargeability of debt, the adversary

3   proceeding was dismissed on December 8, 2010 because Creditors failed to appear at

4   a status conference, that Creditors sought reconsideration of dismissal of their

5   adversary proceeding against her, which was denied, that Creditors obtained a

6   judgment against her in their state court lawsuit against her and others on May 13, 2011

7   and recorded abstracts of judgment against her and Brown in 2012, that her husband,

8   Brown, filed his own Chapter 7 bankruptcy case on November 30, 2012 and received a

9   discharge on May 20, 2013, that Creditors filed an adversary proceeding against Brown

10  for nondischargeability of debt on January 2, 2013 in which the court entered a

11  judgment in Creditors' favor on May 2, 2013, that Debtor and Brown found a *bona fide*

12  purchaser of the Property for value and opened escrow on August 17, 2020, that

13  Creditors made a demand on escrow on September 4, 2020, that afterwards, the buyer

14  cancelled the escrow on September 22, 2020, that Debtor and Brown received a

15  backup offer to purchase the Property on September 24, 2020 and opened escrow on

16  September 25, 2020, that Creditors again made a demand on escrow on October 13,

17  2020 and that the sale to the backup buyer is in danger of falling out of escrow and in

18  jeopardy due to Creditors' escrow demand.  *Id.* at 24-25.

19      As discussed herein, Debtor's factual assertions in the Motion are insufficient to

20  make a *prima facie* case showing that she has a community property interest in the

21  Property in order to demonstrate standing to enforce a discharge injunction against

22  Creditors for attempting to collect a debt against this alleged community property

23  interest through civil contempt proceedings pursuant to Local Bankruptcy Rule 9020-1.

24      Debtor's assertions of ownership of the Property as community property in the

25  Motion are not substantiated.  In her declaration in support of the Motion, Debtor states

26  that formal title is held by Brown as his sole and separate property and Beard, as sole

27  and separate property, as joint tenants.  Motion at 23.  Formal title to the Property in

28  joint tenancy between Debtor's husband, Brown, and another party, Beard, is

1  incompatible with the property being community property between Debtor and Brown. [3]

2  *See* California Civil Code § 682(a) and (d) (joint tenancy and community property are

3  separate forms of joint interests); *In re Brace,* 9 Cal.5th 903, 916-917 (2020), *citing inter*

4  *alia, Siberell v. Siberell,* 214 Cal. 767, 773 (1932).[4]   Joint tenancy with two named joint

5  tenants indicates that each joint tenant, namely, Brown and Beard, who are not married

6  to each other, has an undivided joint tenancy interest in the Property.   *Id.*   Debtor is not

7  on formal title on the Property as she is not named as a joint tenant by her own

8  admission.   However, Debtor states in her declaration that only she and Brown acquired

9  the Property as community property.   This assertion does not explain why Debtor is not

10  on record title either as a joint tenant or as owner of community property, and why there

11  is a third party, Beard, who is not her spouse, on title to the Property.   Debtor does not

12

13  ───────────────────

[3] While Debtor does not provide any documents of title for the Property as evidence to substantiate her
claims of ownership in the Motion, Creditors in opposition provided copies of recorded title documents to
the Property showing that Debtor had executed quitclaim deeds transferring her interest to Brown and
Beard in 2001 and 2002, and later in 2008, Beard transferred his interest to him and Brown as joint
tenants.  Exhibits 4-7 to Opposition.  Debtor's transfers to Brown and Beard appear to have worked a
transmutation of her community interest in the Property to Brown as his separate property under
California Family Code §§ 850-852 and to Beard as a gift.  In particular, Creditors offered a copy of a
quitclaim deed executed by both spouses, Debtor and Brown as husband and wife as joint tenants,
transferring their interests to Brown as a married man as his sole and separate property, which deed was
executed on March 8, 2002, and recorded with the Los Angeles County Recorder on March 21, 2002.
Exhibit 5 to Opposition.  None of these transfers which evidence that the Property is Brown's separate
property are explained by Debtor in the Motion as to how she retains a community property interest after
these recorded transfers.  Based on these transfers of interests in the Property by Debtor and Brown to
others, it may well be that the title presumption of California Evidence Code § 662 applies since the title
as documented is not just among the spouses, Debtor and Brown.  California Evidence Code § 662
provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title.
This presumption may be rebutted only by clear and convincing proof."

[4]  In *In re Brace,* the California Supreme Court noted the distinctions between property held as joint
tenancy and community property: "Joint tenancy creates a right of survivorship, whereby title passes to
the surviving spouse without going through probate. (See *Siberell*, supra, 214 Cal. at p. 773, 7 P.2d
1003.) In addition, joint tenants typically have separate interests in the property. (*Riddle v. Harmon* (1980)
102 Cal.App.3d 524, 527, 162 Cal.Rptr. 530 (*Riddle*).) This means that one joint tenant's interest cannot
be reached by the creditors of the other joint tenant. One joint tenant can also unilaterally sever the joint
tenancy or alienate his or her share. (*Ibid.*)  Community real property, by contrast, generally cannot be
alienated by one spouse without the consent of the other spouse. (Fam. Code, § 1102.) In addition, "the
community estate is liable for a debt incurred by either spouse before or during marriage" except as
otherwise expressly provided by statute. (*Id.*, § 910, subd. (a).) At death, there is no automatic right of
survivorship; half of the community property belongs to the surviving spouse, and the other half belongs
to the decedent. (Prob. Code, § 100, subd. (a).) In the absence of a will, however, the decedent's share of
the community property passes through intestacy to the surviving spouse. (*Id.*, § 6401, subd. (a).)." 9
Cal.5th at 917-918.

1   explain these inconsistencies in the Motion.

2       Debtor asserts in her declaration in support of the Motion that she has a 50

3   percent interest in the Property as community property because she and Brown

4   acquired the Property in 1997 with community property funds. *Id.* There is no evidence

5   which corroborates this assertion. Moreover, it is difficult to reconcile Debtor's claim of

6   having a 50 percent community property interest where she is not on title, and two

7   others, namely Brown and Beard, are on title as joint tenants, thus, holding themselves

8   50 percent undivided interests as joint tenants. The Property cannot be entirely

9   community property because the title holders are not all parties to a single marriage.

10      Moreover, Debtor's assertions in the Motion that she listed the Property as a

11  community property asset on her bankruptcy petition and schedules are not supported

12  in the record. In this case, Debtor as a self-represented party filed a voluntary petition

13  for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C., on May 25, 2010. Docket

14  No. 1. The court takes judicial notice of Debtor's bankruptcy petition and schedules and

15  other documents filed in this bankruptcy case pursuant to Federal Rule of Evidence

16  201. *See* Russell, *Bankruptcy Evidence Manual,* § 201.6 (online ed. October 2020

17  update). On her bankruptcy petition, Debtor stated her address as 4906 Pacifica Ave.,

18  Palmdale, CA 93552, Docket No. 1 at 1, and this address is not the subject Property. [5]

19  Moreover, Debtor listed her mailing address on her bankruptcy petition as 3053 Rancho

20  Vista Blvd., #188, Palmdale, CA 93551. *Id.* This also is not the subject Property.

21  Debtor did list on her schedule of real property assets, Schedule A, a "Primary

22  Residence" with no address information and secured claims in the amount of

23  $816,014.00 on this property. *Id.* at 13 (scheduling property as "w," presumably for

24  wife). Debtor's Schedule D listed aggregate secured claims in the same amount,

25  $816,014.00, related to a "Primary Home" and two lenders, Ocwen Loan and Saxon

26

27  [5]  Debtor later filed a change of address form in this case on October 4, 2010, changing her address to
41160 Myrtle Street, Palmdale, CA  93551, which is the address of the Property, but that her mailing

28  address remained the same as stated on the petition.  Docket No. 29.  While this change of address form
indicates Debtor's association with the Property, this change of address form indicates that the Property
was not the address for her that she listed on the petition and schedules.

1  Mortgage.  *Id.* at 18.  Debtor's Statement of Intention, *id.* at 48, listed these two lenders,

2  Ocwen Loan and Saxon Mortgage, and the property securing the debts as Debtor's

3  "Primary Home @ 8508 Tournament Dr., Memphis, TN 38125[.]"  *Id.* at 48.  This

4  "Primary Home" is not the subject Property.  Thus, the record based on Debtor's

5  bankruptcy petition and schedules does not support her contention in the Motion that

6  she listed the Property as a community property asset on her petition and schedules as

7  the only real property listed in her schedules was her "Primary Home" in Tennessee.

8       Moreover, Debtor's assertions in the Motion that the Property was a community

9  property asset because she and Brown were and are married are not supported in the

10 record.   Debtor stated her marital status on her bankruptcy petition as "Divorced" or

11 "Unmarried."  *Id.* at 34 ("Debtor's Marital Status: Divorced"); *id.* at 59 ("Marital/filing

12 status. . . . ☑ Unmarried."); *see also,* Chapter 7 Statement of Current Monthly Income

13 and Means-Test Calculation, Docket No. 13 at 2 ("Marital/filing status. . . . ☑

14 Unmarried.").  Debtor's statements on her bankruptcy petition and schedules that she

15 was divorced or unmarried are inconsistent with her statements in her declaration in

16 support of the Motion that she was and is married to Brown, and if she was "divorced" or

17 "unmarried" as she stated in her bankruptcy petition, Debtor does not explain in the

18 Motion how she could be the owner of community property if she was not then married

19 when she filed her bankruptcy petition.  It is possible that there were marital dissolution

20 proceedings pending as of the petition date in which community property had not yet

21 been divided, but this is not explained in the Motion.[6]  However, if Debtor was divorced

22 or unmarried in 2010 as she then stated on her bankruptcy petition, then how can the

23 Property be community property ten years later in 2020 when the Property is being

24 sold?  Debtor's representations of her marital status in her bankruptcy petition and

25

26 [6] The court also notes that Creditors filed as another exhibit to the Opposition, a "Petition for Legal
   Separation," signed by Debtor, and filed in the Superior Court of California for the County of Los Angeles
27 on April 17, 2009 in *In re Marriage of Diana Beard-Williams, Petitioner, and Allen Brown, Respondent,*
   No. MD036787, seeking to confirm to "Respondent", i.e., Brown, the "Property of 41160 Myrtle Street,
28 Palmdale, CA  93551" as his separate property.  Exhibit 8 to Opposition.  This court filing indicates that
   Debtor considered the Property to be Brown's separate property, which is additional evidence
   inconsistent with Debtor's contention in the Motion that the Property was and is community property.

schedules as divorced or unmarried do not support the contentions in the Motion that the Property is her community property ten years later.

Accordingly, the court determines that Debtor's assertions in the Motion that she has a community property interest in the subject Property are problematic and uncertain and would need to be bolstered in order for her to make a *prima facie* showing under Local Bankruptcy Rule 9020-1 that there is cause for the court to issue an order to show cause re: contempt on grounds that Creditors are violating a discharge injunction to collect a discharged debt from a community property interest of hers and Brown's. There are too many inconsistencies between Debtor's assertions and the record regarding her ownership interest in the Property, her marital status and her disclosure of her ownership interest on her bankruptcy petition and schedules for the court to find that she has made such a *prima facie* showing for relief here.

The court will note additional facts that indicate the requested relief is not warranted here.  The court previously granted Creditors relief from the automatic stay in this case to pursue a state court fraud action against Debtor on October 1, 2010. Docket No. 26.  As Debtor noted in her declaration, Creditors' related adversary proceeding against Debtor to determine nondischargeability of debt in this case, No. 2:10-ap-2638-PC (the "Adversary"), however, was dismissed on December 8, 2010, Adversary Docket No. 8.  Debtor's discharge was entered in this case on April 8, 2011, Docket No. 49.  However, although not discussed in the Motion, the Property, even if it had been listed in the petition and schedules, was not administered in this case by the Chapter 7 trustee as he filed a "no distribution" report as reflected on the case docket on January 27, 2011, and Debtor's bankruptcy case was closed on March 19, 2013. Docket No. 53.

On or about May 13, 2011, the state court entered a judgment in favor of Creditors and against both Debtor and Brown in the state court fraud action.  *See* Motion at 11; State Court Judgment (copy attached as Exhibit 1 to Opposition).  Brown commenced his own bankruptcy case in this court by filing a voluntary petition for relief

under Chapter 7 on November 30, 2012, which was assigned to Judge Russell.  No.

2:12-bk-49655-BR.  Brown Main Bankruptcy Case, Docket No. 1.  Brown listed the

Property as his street address on his bankruptcy petition, Brown Main Bankruptcy Case,

Docket No. 1 at 1, and he listed the Property as an asset on his bankruptcy schedules.

Brown Main Bankruptcy Case, Docket No. 1 at 11 (Schedule A, stating that "Debtor's

name is on title but not on loan. . . . Home was refinanced by family members.").  Brown

listed a secured claim of $493,200.00 on the Property.  *Id.*  In his Statement of Intention,

Brown stated that he was only on title to the Property, and there was "no loan on

primary residence to discharge."  *Id.* at 41.  Brown also listed his marital status as

"Legally sep[arated]."  *Id.* at 26.  Brown later, however, listed himself as "Married, not

filing jointly, with declaration of separate households" on his means test computation

form.  *Id.* at 47.

Creditors filed an adversary proceeding for nondischargeability of debt against

Brown in his bankruptcy case on January 2, 2013, Adversary No. 2:13-ap-01002-BR,

Docket No. 1.  The court by Judge Russell entered findings of fact and conclusions of

law and a judgment thereon in that adversary proceeding against Brown and in favor of

Creditors on May 2, 2013, holding that the state court judgment debt against him based

on fraud was not dischargeable based on application of the doctrine of issue preclusion

from the state court judgment.  Findings of Fact and Conclusions of Law and Judgment,

*Acosta v. Brown (In re Brown),* Adv. No. 2:13-ap-01002-BR (Bankr. C.D. Cal. May 2,

2013) (copy attached as Exhibit 2 to Opposition), Brown Adversary, Docket No. 9;

Judgment, Brown Adversary, Docket No. 10.  The Ninth Circuit Bankruptcy Appellate

Panel (the "BAP") affirmed the bankruptcy court's judgment against Brown in that

adversary proceeding and the findings that the state court judgment debt was not

dischargeable.  Memorandum Opinion, *Brown v. Acosta (In re Brown),* BAP No. CC-13-

1267-PaTaKu (9th Cir. BAP May 12, 2014) (unpublished memorandum decision)(copy

attached as Exhibit 3 to Opposition), Brown Adversary, Docket No. 24; Order of

Mandate, Brown Adversary, Docket No. 27 (copy also attached as Exhibit 3 to

1   Opposition.  Notably, the BAP's decision observed that the state court judgment

2   awarded Creditors damages against Brown and Debtor Beard-Williams, among others,

3   jointly and severally.  *Id.,* Memorandum Decision at 7.

4           Brown's discharge was entered in his bankruptcy case on May 20, 2013.  Brown

5   Main Bankruptcy Case, Docket No. 29.  Accordingly, Brown remains personally liable to

6   Creditors for the debt from the state court judgment, which is nondischargeable as to

7   him.  The Chapter 7 trustee in Brown's case did not administer the Property as an asset

8   of his bankruptcy estate as she filed a "no distribution" report on May 13, 2013, and

9   Brown's case was closed on February 5, 2014.  Brown Main Bankruptcy Case, Docket

10  No. 32.

11          However, Debtor's motion presents the court with the issue of what is the effect

12  of Debtor's discharge in this case on Creditors' actions to collect against alleged

13  community property of Brown and Debtor on the debt owed by Brown from the state

14  court fraud judgment against Brown and Debtor, which debt is dischargeable as to her

15  but nondischargeable as to him.   As discussed below, regardless of whether Debtor

16  has a valid community property interest in the Property, the court determines that

17  Debtor has not made a *prima facie* showing for issuance of an order to show cause re:

18  civil contempt pursuant to Local Bankruptcy Rule 9020-1 on grounds that Creditors'

19  actions to enforce the debt owed by Brown against the Property violate the discharge

20  injunction in this case pursuant to 11 U.S.C. § 524(a)(3).

21          Bankruptcy courts have the power of civil contempt under 11 U.S.C. § 105 and

22  Federal Rule of Bankruptcy Procedure 9020.  *In re Rainbow Magazine, Inc.*, 77 F.3d

23  278, 284-285 (9th Cir. 1996). In civil contempt proceedings, "[t]he moving party has the

24  burden of showing by clear and convincing evidence that the contemnors violated a

25  specific and definite order of the court." *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d

26  1178, 1190-1191 (9th Cir. 2003) (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d

27  1059, 1069 (9th Cir. 2002)).  Clear and convincing evidence is a "higher standard than

28  the preponderance of the evidence standard but less stringent than beyond a

1    reasonable doubt." *United States v. Powers,* 629 F.2d 619, 626 n. 6 (9th Cir. 1980)

2    (citation omitted).

3       "[A] court may hold a creditor in civil contempt for violating a discharge order if

4    there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."

5    *Taggart v. Lorenzen,* 139 S.Ct. 1795, 1799 (2019) (emphasis in original).  "In other

6    words, civil contempt may be appropriate if there is no objectively reasonable basis for

7    concluding that the creditor's conduct might be lawful."  *Id.*  The Ninth Circuit recently

8    considered the *Taggart* case on remand*,* applying the objective reasonableness

9    standard directed by the Supreme Court.  *In re Taggart,* 980 F.3d 1340 (9th Cir. 2020).

10   As the Ninth Circuit stated in *Taggart* on remand, "Civil contempt is a 'severe remedy'

11   and, correspondingly, the Supreme Court has set a significantly high hurdle for when it

12   is imposed."  *Id.* at 1347, *citing Taggart v. Lorenzen*, 139 S.Ct. at 1802.  As the Ninth

13   Circuit further observed, "[t]he standard is rooted in the concept that 'basic fairness

14   requir[es] that those enjoined receive explicit notice of what conduct is outlawed before

15   being held in civil contempt.'"  *Id.* (internal quotation marks and citation omitted).  Thus,

16   the appropriate standard is, as observed by the Ninth Circuit, quoting the Supreme

17   Court, "civil contempt may be appropriate if there is no objectively reasonable basis for

18   concluding that the creditor's conduct might be lawful."  *Id.*, *citing and quoting, Taggart*

19   *v. Lorenzen,* 139 S.Ct at 1799.

20       Here, the court must apply the Supreme Court's standard as recently considered

21   by the Ninth Circuit in *In re Taggart*, that is, the court must determine whether Creditors

22   had any objectively reasonable basis for concluding that their enforcement of their

23   judgment lien against the Property might be lawful and thus, might not violate the

24   discharge injunction from this case.  *In re Taggart,* 980 F.3d at 1348.

25       Under this objective standard of *Taggart*, the court determines that as discussed

26   herein, Creditors had an objectively reasonable basis for concluding that the Property

27   was not postpetition-acquired community property protected by the discharge injunction

28   of 11 U.S.C. § 524(a)(3) and that therefore, their enforcement of the judgment lien

1  against Brown's community property interest in the Property might have been lawful and

2  thus, might not have violated the discharge injunction.  Accordingly, the court

3  determines that Debtor has failed to carry her burden of making a *prima facie* showing

4  to demonstrate by clear and convincing evidence that there is no fair ground of doubt as

5  to whether the discharge injunction in this case bars Creditors from taking action to

6  collect the debt owed by Brown from the Property in order to warrant the issuance of an

7  order to show cause re: contempt pursuant to Local Bankruptcy Rule 9020-1.

8          As previously discussed, the record before the court in the moving and opposing

9  papers fails to substantiate that Debtor has a community property interest in the

10 Property to protect due to lack of corroborating evidence and lack of clarity regarding

11 her title and her marital status.  Even if the Property was Debtor's community property

12 with Brown, however, the court would still deny her request for an order to show cause

13 re: contempt.

14         A prepetition community property asset owned by a debtor and a nonfiling

15 spouse that is not administered by a Chapter 7 bankruptcy trustee in the debtor's "no

16 asset" bankruptcy case reverts back to the debtor and the spouse as community

17 property after the debtor's bankruptcy case is closed pursuant to 11 U.S.C. §554(c).  *In*

18 *re Moreno,* ___B.R. ___, No. 6:19-bk-11255-WJ Chapter 7, 2020 WL 6929247 at *6

19 (Bankr. C.D. Cal. July 17, 2020); *see also, Sanwa Bank California v. Chang*, 87

20 Cal.App.4th 1314, 105 Cal.Rptr.2d 330 (2001).

21         *Moreno* involved the case of a debtor who filed her Chapter 13 bankruptcy case

22 while her husband's separate, earlier-filed Chapter 7 bankruptcy case was still pending

23 whereby the trustee in her Chapter 13 bankruptcy case asked the bankruptcy court to

24 deny confirmation of debtor's proposed Chapter 13 plan and to dismiss her case, citing

25 the overlapping nature of the two cases.  *In re Moreno*, No. 6:19-bk-11255-WJ Chapter

26 7, 2020 WL 6929247 at *1.  Judge Johnson of this court held in *Moreno* that the motor

27 vehicle that debtor drove, which was community property, did not become an asset of

28 her Chapter 13 bankruptcy estate when she filed her case as it already had passed into

her husband's Chapter 7 bankruptcy estate when he commenced his case, and since

the vehicle was not part of Debtor's Chapter 13 estate, the creditor holding a lien

against the vehicle had no secured claim in her case, and her Chapter 13 plan, which

proposed to modify that allowed secured claim, could not be confirmed. *Id.* at *1-5.

However, the vehicle was later transferred by operation of law into her bankruptcy

estate through a technical abandonment under 11 U.S.C. § 554(c) when the husband

properly disclosed it as a community property asset that was overencumbered and his

case was concluded as a "no asset" case and closed. *Id.* at *5-9.  As Judge Johnson

concluded, the community property vehicle was swept into the estate of the first spouse

to file for bankruptcy under 11 U.S.C. § 541(a)(2), but later flowed back to the husband

and wife as community property and into her bankruptcy estate as it was not

administered in his bankruptcy estate pursuant to 11 U.S.C. § 554(c).  *Id.* at 6 and n. 8*,

citing inter alia, Catalano v. Commissioner,* 279 F.3d 682, 685 (9th Cir. 2002). [7]  While

---

[7]  As explained by Judge Johnson in *Moreno,* "Married couples have the right to file a joint bankruptcy case, but they are not required to do so.  When they elect to file separate bankruptcy cases, such cases can present unique problems in states governed by community property laws.  Section 541(a)(2) of the Bankruptcy Code provides that property of a bankruptcy estate includes all community property of the debtor and the debtor's spouse.  This means that when a married couple files separate bankruptcy cases, all of their community property becomes property of the bankruptcy estate in the case filed first.  Separate bankruptcy estates arise in both cases but the bankruptcy estate in the case filed second does not include any community property because all of it passed into the first bankruptcy estate.  The community property of a couple flows into the bankruptcy estate of the spouse who arrives at the bankruptcy court first."  *In re Moreno,* ___ B.R. at ___, 2020 WL 6929247, slip op. at *2 and nn. 2 and 3, *citing inter alia,* 11 U.S.C. § 541(a)(2) and *Texaco, Inc. v. Barlett (In re Barlett),*  24 B.R. 605, 608 (9th Cir. BAP 1982) (one of the first published decisions to hold that "virtually all of a couple's California community property becomes part of the estate of the first spouse to file a petition").  In this case as well as in *Moreno,* the alleged community property asset was not administered in the first spouse's bankruptcy case as the asset was technically abandoned pursuant to 11 U.S.C. § 554(c) when the Chapter 7 trustee filed a "no distribution" report and the case was closed.  11 U.S.C. § 554(c) states: "(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."  As Judge Johnson observed in *Moreno,* "Under this provision, any properly disclosed asset in a bankruptcy case reverts back to the debtor when the case closes if the trustee does not sell or otherwise administer the asset."  *In re Moreno,* ___ B.R. at ___, 2020 WL 6929247, slip op. at *6, *citing,* 11 U.S.C. § 554(c).  Judge Johnson further observed, "[under section 554(c), during the pendency of the bankruptcy case of [the first spouse to file], he and the Debtor [i.e., the second spouse to file bankruptcy] had the right to receive back (at the end of the [first bankruptcy] case all exempt assets, overencumbered assets and any other assets which the trustee failed to administer."  *Id.* at 7.  Thus, as Judge Johnson concludes: "This is a well-known feature of bankruptcy law.  Congress designed the bankruptcy estate under section 541(a) to be very broad and to sweep in all assets of a debtor (including community property).  But at the end when the case closes, all property disclosed and unadministered property flows out of the estate and back to the original owners."  *Id.*  According to Judge Johnson, "[p]ursuant to section

1  the court in *Moreno* held that debtor's original Chapter 13 plan could not be confirmed,

2  the court denied the Chapter 13 trustee's motion to dismiss because the debtor could

3  propose a revised plan to modify the secured creditor's lien since the community

4  property vehicle became property of her estate by operation of law.  *Id.* at 9 and n. 13.

5  *Moreno* thus supports the proposition that in this case, the Property, if it is properly

6  disclosed community property as Debtor contends, became part of the estate in Brown's

7  subsequent bankruptcy case as a community property asset pursuant to 11 U.S.C. §

8  541(a)(2) when the Property was technically abandoned in her bankruptcy case

9  pursuant to 11 U.S.C. § 554(c) and was thus subject to collection by Creditors of the

10  nondischargeable debt that he owed to them.

11      If the Property was a community property asset not properly disclosed on

12  Debtor's bankruptcy petition and schedules, then the case of *Sanwa Bank California v.*

13  *Chang,* would appear to apply, and in that case, the California Court of Appeal held that

14  an asset owned as community property before the debtor husband's bankruptcy case,

15  which was fraudulently transferred to the wife, and not administered in his bankruptcy

16  case, was prepetition community property and was not protected by the discharge

17  injunction of 11 U.S.C. §524(a)(3) from postbankruptcy recovery by the creditor.  *Sanwa*

18  *Bank California v. Chang*, 87 Cal.App.4th at 1318, 105 Cal.Rptr.2d at 332-333.  The

19  court in *Sanwa Bank California v. Chang* affirmed the trial court's judgment holding the

20  wife liable for the fraudulent conveyance and rejecting her defense that pursuant to 11

21  U.S.C. § 524(a)(3), her husband's bankruptcy discharge also served to discharge her

22  from liability under state law grounds for fraudulent conveyance, stating that "[t]he

23  injunction created by [her husband's] discharge does not protect the residence from the

24  present fraudulent conveyance action because it was pre-bankruptcy property, not after-

25

26  541(a), on the petition date, the property of the Debtor's bankruptcy estate included her right to receive
    community property that would later flow out of her husband's [first filed] bankruptcy case when it closed
27  in the future."  *Id.* at 8.  For purposes of this case, pursuant to 11 U.S.C. § 541(a)(2), the bankruptcy
    estate in Brown's bankruptcy case included any community property that flowed out of Debtor's
28  bankruptcy case pursuant to 11 U.S.C. § 554(c) if such community property existed at the
    commencement of his bankruptcy case.

acquired property, and it was never made part of the bankruptcy estate." *Id.* at 1315-1316, 1319.

The circumstances in this case indicate that the discharge injunction of 11 U.S.C. §524(a)(3) does not apply to the Property because, assuming *arguendo* that the Property was community property of Debtor and Brown, the Property was and is a prepetition community property asset subject to Creditors' prepetition community claim which was determined to be nondischargeable in Brown's Chapter 7 bankruptcy case. As noted above, the statutory language of 11 U.S.C. § 524(a)(3) does not refer to prepetition community property, providing in pertinent part:  "(a)  A discharge in a case under this title . . . (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, **property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case** [i.e., postpetition community property], on account of any allowable community claim . . . ." 11 U.S.C. § 524(a)(3) (emphasis added); *see also,* 4 Levin and Sommer, *Collier on Bankruptcy,* ¶ 524.02[3][a] (online edition, 2020)(describing 11 U.S.C. § 524(a)(3) as "[t]he special community property provision to protect after-acquired property of the discharged spouse from the other spouse's creditors").  There is nothing in the statutory language of 11 U.S.C. § 524(a)(3) to support Debtor's claim that it protects her interest in prepetition community property, such as the Property acquired in 1997 before her bankruptcy case in 2010.

The community property discharge injunction under 11 U.S.C. § 524(a)(3) does not apply to the Property in this case where, assuming *arguendo* that it was community property included in the Debtor's bankruptcy estate, the Property was technically abandoned in Debtor's bankruptcy case (as well in Brown's subsequent bankruptcy case) pursuant to 11 U.S.C. § 554(c), which revested it in Debtor and Brown, and Creditors now hold a nondischargeable claim against Brown, which is enforceable against the prebankruptcy community property interest in the Property that he and

1  Debtor own jointly after revesting from her bankruptcy case (and from Brown's

2  bankruptcy case).   Despite the court's research, it was unable to find any published or

3  unpublished decision applying 11 U.S.C. §524(a)(3) to a prepetition community property

4  asset not administered due to abandonment pursuant to 11 U.S.C. § 554.  While there

5  does not appear to be published case authority on point, this result is supported by

6  bankruptcy law treatises, such as *Collier Family Law and the Bankruptcy Code* and

7  *Rutter Group California Practice Guide: Bankruptcy*.

8
9
10
11
12
13
> The protection provided by 11 U.S.C. §524(a)(3) applies only
> to community property acquired after the commencement of
> the case.  There may be a community property asset owned
> by the debtor and the nonfiling spouse before the case was
> filed, but not administered by the trustee and still owned as
> community property after the discharge is issued.  Similarly,
> a community property asset that is included in the estate and
> abandoned by the trustee is not protected by the injunction
> provided by 11 U.S.C. §524(a)(3).

14  1 McGarity, et al., *Collier Family Law and the Bankruptcy Code,* ¶4.08 (online ed. July

15  2020 update), *citing, Sanwa Bank California v. Chang,* 87 Cal.App.4th 1314, 105

16  Cal.Rptr.2d 330 (2001) (asset owned as community property before husband's

17  bankruptcy, fraudulently transferred to wife, and not administered in bankruptcy, was

18  held to be community property and not protected by the discharge injunction from

19  recovery by creditor).  [8]

20
21
22
23
> The [11 U.S.C.] § 524(a)(3) injunction merely prevents
> creditors holding a community claim from proceeding against
> postpetition community property.  It is *not* a discharge of the
> nonfiling spouse's *personal liability.*  [See *Sanwa Bank Calif.
> v. Chang* (2001) 87 CA4th 1314, 1319, 105 CR2d 330, 333].
> Thus, community claims can still be enforced against the

24

25
26
27
28
[8]   This court also notes that another court holding that a nondebtor spouse's separate property is liable
for a community debt under New Mexico law has stated in dicta in a published opinion that "One treatise,
however, states that following a debtor's discharge where no claim is determined to be nondischargeable,
collection on a debt by a creditor of the nondebtor spouse is limited to the nondebtor spouse's separate
property *and any pre-bankruptcy community property not included in the estate.* Collier on Bankruptcy, ¶
524.01 (1993), (*citing In re Karber,* 25 B.R. 9 (Bankr.N.D.Tex.1982))."  *In re Strickland,* 153 B.R. 909, 912
(Bankr. D. N.M. 1993) (emphasis in italics added), *cited and quoted in, Sanwa Bank California v. Chang,*
87 Cal.App.4th at 1318-1319, 105 Cal.Rptr.2d at 333.

> nonfiling spouse's *separate property* or *prebankruptcy* community assets that for any reason were not included in the debtor's bankruptcy estate.  [*Sanwa Bank Calif. v. Chang,* supra, 87 CA4th at 1319, 105 CR2d at 333--creditor with community claim could reach prebankruptcy community property fraudulently transferred to nonfiling spouse that was never made part of the bankruptcy estate.]

March, Ahart & Shapiro, *Rutter Group California Practice Guide: Bankruptcy,* ¶¶ 22:132 – 22:133 (online ed. December 2020 update) (emphases in original).

The court agrees with the conclusions of these bankruptcy law treatises that creditors do not violate the discharge injunction of 11 U.S.C. § 524(a)(3) when they collect upon prebankruptcy community property that is not administered by the trustee in a debtor's bankruptcy case and is still owned as community property after the discharge, which conclusions are supported by the express language of 11 U.S.C. § 524(a)(3) and case law discussed above in *In re Moreno* and *Sanwa Bank California v. Chang*.  Assuming *arguendo* in this case that Debtor listed the Property as a community property asset on her bankruptcy schedules, the trustee did not administer the Property as he filed a "no distribution" report, and the case was subsequently closed.  Upon the closure of this "no distribution" Chapter 7 bankruptcy case, the Property as a scheduled but not administered asset would have revested in Debtor and Brown, the community, because the Property was technically abandoned to Debtor by the Chapter 7 trustee in this bankruptcy case pursuant to 11 U.S.C. §554(c).  Upon the filing of Brown's Chapter 7 bankruptcy petition, however, the Property became part of the estate in his bankruptcy case pursuant to 11 U.S.C. § 541(a)(2) (a bankruptcy estate includes community property owned by a debtor (or a debtor's spouse) "as of the commencement of the case").  As one court has observed,

> [A] non-debtor spouse, who is not granted a discharge or afforded a fresh start in the debtor's case, is merely an incidental beneficiary of the community property discharge injunction to prevent harm to the debtor. A non-debtor spouse can file his or her own bankruptcy case to invoke the protections of the Bankruptcy Code. And if the non-debtor spouse files a separate bankruptcy case but was not a party

to the [11 U.S.C.] § 524(a)(3) action in the original debtor-spouse's case, he or she ordinarily would not be bound by a court's prior decision on dischargeability of debt in the hypothetical case.

*Roman v. Greiner (In re Greiner),* Adv. No. 14-1016 J, 2014 WL 6474067 at *8 (Bankr. D. N.M. Nov. 18, 2014).  In ruling that the debt owed by Brown based on the state court judgment was not dischargeable, Judge Russell, who presided over Brown's Chapter 7 bankruptcy case, at least implicitly concluded that Creditors were not precluded from holding a nondischargeable claim against Brown based on the state court judgment by the doctrine of issue preclusion (collateral estoppel) and the dismissal of Creditors' adversary complaint in this Debtor's bankruptcy case.  *See* Findings of Fact and Conclusions of Law, *Acosta v. Brown (In re Brown),* Adv. No. 2:13-ap-01002-BR (Bankr. C.D. Cal. May 2, 2013) (copy attached as Exhibit 2 to Opposition).  The BAP did not hold otherwise in upholding Judge Russell's decision in Brown's bankruptcy case.  Memorandum Opinion, *Brown v. Acosta (In re Brown),* BAP No. CC-13-1267-PaTaKu, 2014 WL 1891208 (9th Cir. BAP May 12, 2014) (unpublished memorandum decision) (copy attached as Exhibit 3 to Opposition).

Debtor alleges that Creditors are violating the discharge injunction in this bankruptcy case of hers pursuant to 11 U.S.C. § 524(a)(3) by enforcing a prepetition community claim against the Property asserted to be community property belonging to her and Brown, contending that "[t]he precedent established in the 9th circuit is clear, 'the personal liability of a nondebtor spouse that survives the bankruptcy only can be enforced against property of the nondebtor spouse that is not community property.' *In re Kimmel,* 378 B.R. 630, 636 (B.A.P. 9th Cir. 2007)."  Motion at 16; *see id.* at 15-19.  In this regard, Debtor refers to Brown as the "nondebtor spouse," and contends that based on *In re Kimmel* any personal liability that he may have can only be enforced against his property that is not community property based on the discharge injunction from this case pursuant to 11 U.S.C. § 524(a)(3).  *Id.*

Debtor's reliance upon *In re Kimmel* is misplaced.  The issue before the BAP in

1  *Kimmel* was "whether the [ ] discharge of [the debtor] protected future-acquired

2  community property from enforcement of a discharged community claim." *In re Kimmel,*

3  378 B.R. at 634.  In *Kimmel,* the creditor had sued debtor and her spouse on a

4  community claim, and debtor filed a Chapter 7 bankruptcy case and was discharged.

5  *Id.* at 633.  The creditor proceeded with the lawsuit against the spouse and obtained a

6  judgment against him personally on the community claim, and later, attempted to collect

7  on the spouse's community property interest in debtor's postpetition wages.  *Id.*  The

8  debtor filed a motion to enforce the discharge injunction under 11 U.S.C. § 524(a)(3)

9  against the creditor's efforts to collect on the spouse's community property interest in

10  her postpetition wages, which the bankruptcy court granted and the BAP affirmed.  *Id.* at

11  633-638.  Specifically, the BAP in *Kimmel* stated that "[u]nder [11 U.S.C.] § 524(a)(3),

12  [the debtor's] discharge permanently enjoined enforcement of the [   ] Judgment [on

13  the community claim] against all future-acquired community property, including both her

14  own and [her spouse's] interests in her wages." *Id.* at 635-636 and n. 4. [9]  The BAP

15  further observed: "Regardless of whether the community claim was attributable to the

16  actions of the debtor, the nondebtor spouse, or both, the effect of § 524(a)(3) is that all

17  community property acquired post-bankruptcy is protected by the discharge."  *Id.* at

18  635-636.

19      The facts of this case are different than those in *Kimmel* because Creditors are

20  taking action to enforce their community claim against prepetition community property

21  as opposed to a creditor taking action to enforce his community claim against

22  postpetition, or future acquired, community property.  *See also,* Motion at 16 (in

23  discussing the facts of *Kimmel,* Debtor notes that "the creditor continued to pursue after-

24  acquired community property to collect against the judgment").  Thus, this case is

25  distinguishable from *Kimmel* because Creditors seek to enforce their community claim

26  against prepetition community property which is not covered by the discharge injunction

27

28

---

[9]  In footnote 4 of the opinion in *Kimmel,* the BAP cited and quoted verbatim the entire text of 11 U.S.C. § 524(a)(3).  *In re Kimmel,* 378 B.R. at 635-636 n. 4.

1  of 11 U.S.C. § 524(a)(3), which by its express terms only refers to community property

2  "that is acquired after the commencement of the case," i.e., post-petition community

3  property.  The statutory language for the discharge injunction of 11 U.S.C. § 524(a)(3)

4  does not refer to prepetition community property.

5  The specific holding of the BAP in *Kimmel* was that under 11 U.S.C. § 524(a)(3),

6  the debtor's discharge "permanently enjoined enforcement of the [judgment] against all

7  future-acquired community property[.]"  *Id.* at 635-636 ("the effect of § 524(a)(3) is that

8  all community property acquired post-bankruptcy is protected by the discharge.").  The

9  BAP repeatedly stated in *Kimmel* that 11 U.S.C. § 524(a)(3) protects "after-acquired

10  community property," *id.* at 636, such as the post-discharge wages at issue in that case.

11  As discussed above, the question before the BAP in *Kimmel* was specifically

12  stated as "whether the [  ] discharge of [the debtor] protected ***future-acquired***

13  ***community property*** from enforcement of a discharged community claim."  *In re*

14  *Kimmel,* 378 B.R. at 634 (emphasis added).   The question in this case could be framed

15  as "whether the discharge of the debtor protected prepetition community property from

16  enforcement of a discharged community claim."   The answer to this question is given in

17  the analysis provided above, that is, Creditors may enforce their prepetition community

18  claim against the Property as prepetition community property that is not administered in

19  Debtor's bankruptcy case, which was the first of the two spouses to file for bankruptcy,

20  and technically abandoned to Debtor and Brown afterwards.  This is a different answer

21  to a different question that was not addressed in *Kimmel*.

22  Accordingly, the record before the court indicates that Debtor has not met her

23  burden of making a *prima facie* showing that Creditors violated Debtor's discharge

24  injunction under 11 U.S.C. § 524(a)(3) by recording abstracts of judgment on Debtor's

25  alleged community property interest in the Property because the court had granted

26  Creditors relief from the automatic stay in Debtor's bankruptcy case to proceed with the

27  state court action against her and Brown, and they proceeded to judgment against

28  Debtor and Brown.  However, after obtaining the judgment against Debtor and Brown,

Creditors may not enforce their judgment for a community claim against her *in personam* in light of her discharge, but they may enforce the judgment for the community claim against Brown *in personam* as the debt is nondischargeable as to him, and Creditors may enforce the judgment based on a community claim against the Property as prebankruptcy community property owned by Brown and Debtor not administered in this case and abandoned pursuant to 11 U.S.C. § 554(c) to Debtor and Brown.

Accordingly, for the foregoing reasons, the court will deny the Motion and will decline to issue an order to show cause re: contempt because Debtor has not made out a *prima facie* case to demonstrate by clear and convincing evidence that there is no fair ground of doubt that Creditors should be held in civil contempt for their actions allegedly in violation of the discharge injunction of 11 U.S.C. § 524(a)(3) arising in this case.  A separate final order denying the Motion is being entered concurrently herewith.

IT IS SO ORDERED.

###

Date: January 21, 2021

_____

Robert Kwan
United States Bankruptcy Judge